2013-1241

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

STC.UNM,

Plaintiff-Appellant,

v.

INTEL CORPORATION,

Defendants-Appellees.

Appeal from the United States District Court for the District of
New Mexico in case no. 10-CV-01077, Judge Robert C. Brack

## PETITION FOR REHEARING EN BANC
## OF PLAINTIFF-APPELLANT STC.UNM

Rolf O. Stadheim
George C. Summerfield
STADHEIM & GREAR LTD.
400 North Michigan Avenue
Suite 2200
Chicago, Illinois 60611
Telephone: (312) 755-4400
Facsimile: (312) 755-4408

*Attorneys for Plaintiff-Appellant*
*STC.UNM*

July 3, 2014

# CERTIFICATE OF INTEREST

Pursuant to Fed. Cir. R. 47.4, counsel for plaintiff-appellant, STC.UNM (herein "STC.UNM"), certifies the following:

(1)    The full name of every party or <u>amicus</u> represented by me is: STC.UNM.

(2)    The name of the real party in interest represented by me is: STC.UNM.

(3)    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are: STC is a 501(c)(3) non-profit corporation owned entirely by the University of New Mexico. No publicly held corporation owns 10% or more of STC stock.

(4)    The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

Rolf O. Stadheim
George C. Summerfield
Stadheim & Grear, Ltd.
400 North Michigan Avenue
Suite 2200
Chicago, Illinois 60611


                                                      */s/ Rolf O. Stadheim*
                                                      Rolf O. Stadheim

# TABLE OF CONTENTS

**Page(s)**

CERTIFICATE OF INTEREST                                      i

TABLE OF CONTENTS                                           ii

TABLE OF AUTHORITIES                                       iii

STATEMENT OF COUNSEL                                        1

ARGUMENT                                                    2

    I.     Factual Background                               2

    II.    Summary of Argument                             3

    III.   The History of this "Substantive Right"          3

    IV.    The Panel Decision Eviscerates the Holdings      5
           in <u>Schering</u> and <u>Ethicon</u> That a Co-owner Cannot
           Grant a Release for Past Infringement

    V.    This Court Does Not Have the Judicial Authority to   5
           Create a Substantive Right Allowing a Joint Patent
           Owner to Thwart an Infringement Suit Brought by
           Another Joint Owner

    VI.    A Long Line of Authorities Support Application of   8
           Federal Rule of Civil Procedure 19 in Patent
           Infringement Cases

    VII.  There Is No Sound Policy That Supports Such a     8
           "Substantive Right"

    VIII. Conclusion                                      10

PROOF OF SERVICE

# TABLE OF AUTHORITIES

<u>**Cases**</u>                                                                          <u>**Page(s)**</u>

<u>Atherton v. FDIC</u>,                                                                7
529 U.S. 213 (1997)

<u>DDB Techs., L.L.C. v. MLB Advanced Media, L.P.</u>,                      4
517 F.3d 1284 (Fed. Cir. 2008)

<u>Erie R.R. Co. v. Tompkins</u>,                                                  1, 7
304 U.S. 64 (1938)

<u>Ethicon, Inc. v. United States Surgical Corp.</u>,                          *passim*
135 F.3d 1456 (Fed. Cir. 1998)

<u>Israel Bio-Engineering Project v. Amgen Inc.</u>,                          4
475 F.3d 1256 (Fed. Cir. 2007)

<u>Nat'l Ass'n of Home Builders v. Defenders of Wildlife</u>,              6
551 U.S. 644 (2007)

<u>Northwest Airlines, Inc. v. Transport Workers</u>,                        6, 7
451 U.S. 77 (1981)

<u>O'Melveny & Myers v. FDIC</u>,                                              7
512 U.S. 79 (1994)

<u>Schering Corp. v. Roussel-UCLAF SA</u>,                                  *passim*
104 F.3d 341 (Fed. Cir. 1997)

<u>STC.UNM v. Intel Corp.</u>,
No. 2013-1241 (D. New Mexico)                                            2

<u>Texas Indus. v. Radcliff Materials</u>,                                      1, 7
451 U.S. 630 (1981)

<u>TransCore, LP v. Electronic Transaction Consultants Corp.</u>,        8
563 F.3d 1271 (Fed. Cir. 2009)

## TABLE OF AUTHORITIES

**<u>Cases</u>**                                                                 **<u>Page(s)</u>**

<u>Wheeldin v. Wheeler,</u>                                                         7
373 U.S. 647 (1963)

<u>Willingham v. Star Cutter Co.</u>,                                              3, 4
555 F.2d 1340 (6th Cir. 1977)

**<u>Other Authorities</u>**

35 U.S.C. § 262 (2012)                                                      8

35 U.S.C. § 281 (2012)                                                      1, 6

Fed. R. Civ. P. 19                                                         *passim*

## Statement of Counsel Pursuant to Fed. Cir. R. 35(b)

Based on my professional judgment, I believe the panel decision is contrary to the following precedents of this court: <u>Schering Corp. v. Roussel-UCLAF SA</u>, 104 F.3d 341 (Fed. Cir. 1997); <u>Ethicon, Inc. v. U.S. Surgical Corp.</u>, 135 F.3d 1456 (Fed. Cir. 1998).

Based on my professional judgment, I believe the panel decision is contrary to the following decisions of the Supreme Court of the United States: <u>Texas Indus. v. Radcliff Materials</u>, 451 U.S. 630, 640-41 (1981); <u>Erie R.R. Co. v. Tompkins</u>, 304 U.S. 64, 78 (1938); <u>et al.</u>

Based on my professional judgment, I believe this appeal requires an answer to one or more precedent-setting questions of exceptional importance:

1)   Did the panel err in holding that Federal Rule of Civil Procedure 19 does not apply in patent cases?

2)   Is there any support, in law of logic or justice, for the panel's holding that there is "substantive patent law" that grants one joint patent owner the right to deprive another joint patent owner of its rights under 35 U.S.C. § 281 and Federal Rule of Civil Procedure 19 to maintain a patent infringement suit?

/s/ *Rolf O. Stadheim*
Rolf O. Stadheim
Attorney of Record for STC.UNM

1

# ARGUMENT

## I.    Factual Background

The pertinent facts are simply stated.  Plaintiff-Appellant, STC.UNM, the patent and technology transfer arm of the University of New Mexico, brought suit against Intel Corporation for patent infringement in the District of New Mexico. (A108-10.)  Intel moved to dismiss for lack of standing because the co-owner of the patent, Sandia Corp., was not a party.  (A945-49.)  STC.UNM requested Sandia to join the suit, it refused, and STC.UNM then moved under Federal Rule of Civil Procedure 19 to add Sandia as a party.  (A808-17 & A880-82.)  The district court denied that motion and dismissed the case.  (A1 & A24-44.)

The two judge majority affirmed, holding, "[T]o remove any doubt, this court holds that the right of a patent co-owner to impede an infringement suit brought by another co-owner is a substantive right that trumps the procedural rule for involuntary joinder under Rule 19(a)."  STC.UNM v. Intel Corp., No. 2013-1241, slip op. at 11 (Fed. Cir. June 6, 2014) ("Panel Opinion").

The dissent stated, "The court today holds that Federal Rule of Civil Procedure 19 uniquely does not apply in patent cases," STC.UNM v. Intel Corp., No. 2013-1241, slip op. at 1 (Fed. Cir. June 6, 2014) (Newman, J., dissenting) ("Dissent"), and "[t]here is no support, in law of logic or justice, for today's

holding that the co-owner of a patent cannot be involuntarily joined in an infringement suit and can thereby, by its absence, bar the suit," id. at 8.

## II.    Summary of Argument

There is "no support, in law of logic or justice, for" the Panel's decision. This case should be reheard en banc for the following reasons:

- The ostensible "substantive right" of a patent co-owner "to impede an infringement suit brought by another co-owner" was born of dicta and a misreading of a Sixth Circuit case.

- The panel decision eviscerates the holdings in Schering and Ethicon that a co-owner cannot grant a release for past infringement.

- This Court does not have the judicial authority to create a substantive right allowing a joint patent owner to thwart an infringement suit brought by another joint owner.

- A long line of authorities supports application of Federal Rule of Civil Procedure 19 in patent infringement cases.

- There is no sound policy that supports granting a "substantive right" to a joint patent owner to impede an infringement suit by another joint owner.

## III.    The History of this "Substantive Right"

In Schering Corp. v. Roussel-UCLAF SA, 104 F.3d 341, 345 (Fed. Cir. 1997), this Court stated, in dictum, that there is a "substantive patent right" for a joint patent owner to refuse to join an infringement case. That pronouncement however, was born of a misreading of the Sixth Circuit case, Willingham v. Star

Cutter Co., 555 F.2d 1340 (6th Cir. 1977).  While the contention regarding refusal to join was raised in Willingham, the Sixth Circuit explicitly stated that "we need not reach this issue."  555 F.2d at 1343 n.5.  The dictum from Schering was then adopted in what borders on dictum in Ethicon, Inc. v. U.S. Surgical Corp., 135 F.3d 1456 (Fed. Cir. 1998), where: 1) the co-owner was already a voluntary party to the case as a "defendant-intervenor," id. at 1458; and 2) no consideration was given to the mandate of Federal Rule of Civil Procedure 19(a)(2) that a "court must order that the person be made a party" as either "a defendant or . . . an involuntary plaintiff," see id. at 1472.  This was followed by still more dicta in Israel Bio-Engineering Project v. Amgen, Inc., 475 F.3d 1256 (Fed. Cir. 2007), which stated that "one co-owner has the right to limit the other co-owner's ability to sue infringers by refusing to join voluntarily in the patent infringement suit."  Id. at 1264 (citing Ethicon, 135 F.3d at 1468, and Schering, 104 F.3d at 345).

Then in DDB Technologies, L.L.C. v. MLB Advanced Media, L.P., 517 F.3d 1284 (Fed. Cir. 2008), the majority erroneously stated: "[W]e have explicitly held that Rule 19 does not permit the involuntary joinder of a patent co-owner in an infringement suit brought by another co-owner."  Id. at 1289 n.2 (emphasis added).  In fact, Rule 19 was not addressed in any of these decisions, except in the dissenting opinions in Ethicon, 135 F.3d at 1472, and DDB Technologies, 517 F.3d at 1297.

4

**IV.    The Panel Decision Eviscerates the Holdings in <u>Schering</u> and <u>Ethicon</u> That a Co-owner Cannot Grant a Release for Past Infringement**

<u>Schering</u> and <u>Ethicon</u> hold that a joint patent owner <u>cannot release</u> an infringer for past infringement.  <u>See</u> <u>Schering</u>, 104 F.3d at 345; <u>Ethicon</u>, 135 F.3d at 1467.  The Panel's decision in this appeal now holds that a joint patent owner <u>can</u> release an infringer for past infringement, as a joint patent owner, such as Sandia, could effectively provide the release simply by refusing to join in an infringement suit.  Thus, the release that <u>Schering</u> and its progeny bar, the panel decision allows.  The law does not exalt form over substance.  The binding nature of precedent requires that the panel decision be overturned.

**V.    This Court Does Not Have the Judicial Authority to Create a Substantive Right Allowing a Joint Patent Owner to Thwart an Infringement Suit Brought by Another Joint Owner**

Given the unorthodox birth of this "substantive right," i.e., via a series of statements made in dictum that, through imperceptible metamorphosis ultimately became a "holding," it is not surprising that there has been no subsequent inquiry as to the source of this right.  It is important to undertake that inquiry now – does the right arise from the Patent Statute or federal common law?  The answer is that it arises from neither, and does not, in fact, exist.

There is no support for a "substantive right" under the Patent Statute, and neither the panel decision nor any of the prior decisions make any attempt to find support for the "substantive right" in the statute.  To the contrary, the Patent

Statute points in exactly the opposite direction, negating any such right. Section 281 ("Remedy for Infringement of Patent") provides: "A patentee <u>shall</u> have remedy by civil action for infringement of his patent." 35 U.S.C. § 281 (emphasis added). The "shall," of course, is mandatory. <u>See, e.g.</u>, <u>Nat'l Ass'n of Home Builders v. Defenders of Wildlife</u>, 551 U.S. 644, 661-62 (2007) (listing cases holding that the word "shall" is imperative or mandatory).

Any purported judicially created, federal common-law right allowing one patentee to bar an infringement suit by a co-patentee is precluded by holdings of the Supreme Court.

Starting with the truism that Congress legislates and the courts decide cases and controversies, the Supreme Court decision in <u>Northwest Airlines, Inc. v. Transport Workers</u>, 451 U.S. 77 (1981), informs:

> In almost any statutory scheme, there may be a need for judicial interpretation of ambiguous or incomplete provisions. <u>But the authority to construe a statute is fundamentally different from the authority to fashion a new rule or to provide a new remedy which Congress has decided not to adopt</u>. The presumption that a remedy was deliberately omitted from a statute is strongest when Congress has enacted a comprehensive legislative scheme including an integrated system of procedures for enforcement. Once a statutory scheme is in place, little room is left for the courts to make common law.

<u>Id.</u> at 97 (citation omitted) (emphasis added).

<u>Northwest Airlines</u> further states:

> Thus, once Congress addresses a subject, even a subject previously
> governed by federal common law, the justification for lawmaking by
> the federal courts is greatly diminished. Thereafter, the task of the
> federal courts is to interpret and apply statutory law, not to create
> common law.

<u>Id.</u> at 95 n.34.

The Supreme Court has delineated only two circumstances where the federal

courts are empowered to create common law:

> [T]he Court has recognized the need and authority in some limited
> areas to formulate what has come to be known as "federal common
> law." These instances are "few and restricted," and fall into
> essentially two categories: those in which a federal rule of decision is
> "necessary to protect uniquely federal interests," and those in which
> Congress has given the courts the power to develop substantive law.

<u>Texas Indus., Inc. v. Radcliff Materials, Inc.</u>, 451 U.S. 630, 640 (1981) (citations

omitted); <u>accord</u> <u>Atherton v. FDIC</u>, 529 U.S. 213, 218 (1997); <u>O'Melveny &</u>

<u>Myers v. FDIC</u>, 512 U.S. 79, 87 (1994); <u>Wheeldin v. Wheeler</u>, 373 U.S. 647, 651

(1963); <u>see also</u> <u>Erie R.R. Co. v. Tompkins</u>, 304 U.S. 64, 78 (1938) ("There is no

federal general common law.").[1]

Neither of these exceptions applies to the creation of a common-law

_____

[1] The Supreme Court further explained "uniquely federal interests" include "those
concerned with the rights and obligations of the United States, interstate and
international disputes implicating the conflicting rights of States or our relations
with foreign nations, and admiralty cases." <u>Tex. Indus.</u>, 451 U.S. at 642.

"substantive right" that a joint patent owner can prevent an infringement suit by refusing to join that suit. Without support in the Patent Statute and without common-law authority, there is no proper source from which such a right can be derived.

## VI. A Long Line of Authorities Support Application of Federal Rule of Civil Procedure 19 in Patent Infringement Cases

Petitioner defers to the dissent's exposition on this point. Dissent at 2-10.

## VII. There Is No Sound Policy That Supports Such a "Substantive Right"

It is difficult to conjure justifications for a rule that robs a patent owner of the sole property rights it possesses – the right to exclude others from the unauthorized use of a patented invention, and to obtain compensation for such use. TransCore, LP v. Elec. Transaction Consultants Corp., 563 F.3d 1271, 1275 (Fed. Cir. 2009). The panel, "of course, conscious of the equities at play in this case," advances three purported reasons. Panel Opinion at 12. None withstands scrutiny.

1.  *STC is certainly still free to enjoy all the rights a co-owner enjoys, such as commercializing or exploiting the '998 patent through licensing without consent of the other co-owners. See 35 U.S.C. § 262 (2012). Panel Opinion at 12.*

This Court recognized the sole right granted by a patent being the right to exclude in TransCore, 563 F.3d at 1275 ("[A] patent does not provide the patentee with an affirmative right to practice the patent but merely the right to exclude."). Here, the Panel has posited that a patentee left without this right to exclude still has

the right to license.  Typically, it does not give one great solace to be told that, while his car has been stolen, he still has his bicycle.  In any event, in this case, not even the bicycle remains.  Without the ability to bring an infringement suit, the patent is essentially dedicated to the public, and no meaningful right to license survives.[2]

2.     *Importantly, this limit [on a co-owner's right to enforce a patent] protects,* inter alia*, a co-owner's right to not be thrust into costly litigation where its patent is subject to potential invalidation.*  *Id.*

In reality, a co-owner need not actively participate in the litigation, even if named.  Thus, the litigation would cost little or nothing, and the Panel's "concern" is unfounded.  As to "potential invalidation," the practical lack of any enforcement of a patent would effectively render that patent invalid anyway, and the Panel's perceived "benefit" is non-existent.

3.     *Futhermore, the rule requiring in general the participation of all co-owners safeguards against the possibility that each co-owner would subject an accused infringer to a different infringement suit on the same patent.*  *Id.*

To safeguard a defendant, there is no need for a "rule requiring in general the participation of all co-owners."  Rule 19 provides the safeguard by requiring the joinder of all co-owners.  Whether they "participate" or not is irrelevant – either way they are bound by the resulting judgment.

---

[2] The Panel acknowledges "a license demand may have <u>less</u> bite if STC cannot sue potential licensees if they refuse (and if Sandia would not voluntarily join the suit)."  Panel Opinion at 12 (emphasis added).  The reality is that such demand would have no bite whatsoever.

## VIII.  Conclusion

Justice and the integrity of this Court's precedents demand that this case be

reheard en banc.

Respectfully submitted,

*/s/ Rolf O. Stadheim*
Rolf O. Stadheim
George C. Summerfield
STADHEIM & GREAR, LTD.
400 North Michigan Avenue
Suite 2200
Chicago, Illinois 60611
Telephone: (312) 755-4400
Facsimile: (312) 755-4408

*ATTORNEYS FOR PLAINTIFF-APPELLANT*
*STC.UNM*

**ADDENDUM**

# United States Court of Appeals for the Federal Circuit

———————————

**STC.UNM,**
*Plaintiff-Appellant,*

**v.**

**INTEL CORPORATION,**
*Defendant-Appellee.*

———————————

2013-1241

———————————

Appeal from the United States District Court for the District of New Mexico in No. 10-CV-01077, Judge Robert C. Brack.

———————————

Decided: June 6, 2014

———————————

GEORGE C. SUMMERFIELD, Stadheim & Grear Ltd., of Chicago, Illinois, argued for plaintiff-appellant. With him on the brief were ROLF O. STADHEIM and STEVEN R. PEDERSEN.

ROBERT A. VAN NEST, Keker & Van Nest LLP, of San Francisco, California, argued for defendant-appellee. With him on the brief were STEVEN A. HIRSCH and BRIAN L. FERRALL. Of counsel on the brief were CHAD S. CAMPBELL and DAN L. BAGATELL, Perkins Coie LLP, of Phoenix, Arizona.

———————————

Before NEWMAN, RADER,[*] and DYK, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* Rader.

Dissenting opinion filed by *Circuit Judge* Newman.

RADER, *Circuit Judge.*

The United States District Court for the District of New Mexico dismissed STC.UNM's (STC) suit against Intel Corp. for infringement of U.S. Patent No. 6,042,998 ('998 patent) for lack of standing. The district court held that STC could not maintain its suit because non-party Sandia Corp. is a co-owner of the patent, had not voluntarily joined as a co-plaintiff, and could not be involuntarily joined. Because, "as a matter of substantive patent law, all co-owners must ordinarily consent to join as plaintiffs in an infringement suit," *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1468 (Fed. Cir. 1998), and because Sandia cannot be involuntarily joined under Federal Rule of Civil Procedure 19, this court affirms.

## I.

The background of this case begins with U.S. Patent No. 5,705,321 ('321 patent). The invention disclosed in the '321 patent resulted from contributions of four people: Steven Brueck, Saleem Zaidi, An-Shyang Chu, and Bruce Draper. J.A. 25. At the time of invention, Brueck, Zaidi, and Chu were employed by the University of New Mexico (UNM). *Id.* Draper, however, was employed by Sandia. *Id.* The applicants filed their patent application on June 6, 1995, which issued as the '321 patent on January 6, 1998. The patent carries the title "Method for Manufacture of Quantum Sized Periodic Structures in Si Materi-

---

[*]    Randall R. Rader vacated the position of Chief Judge on May 30, 2014.

als."  The '321 patent claims technology similar to that disclosed in the asserted '998 patent.  *See* J.A. 252–53.

In mid-1996, the four inventors executed a Joint Assignment to UNM of the invention disclosed in the application that issued as the '321 patent ('321 Assignment). J.A. 436–41.  The '321 Assignment erroneously defined all assignors as "employees of the University of New Mexico." J.A. 436.  Draper was not employed by UNM.  UNM was the named assignee.  *Id.*  In pertinent part, the '321 Assignment reads:

> Assignors do hereby sell, assign, and transfer unto Assignee all their right, title, and interest in and to the invention . . . and their entire right, title, and interest in and to any and all Patents which may be issued thereon . . . and in and to any and all divisions, reissues, continuations, and extensions thereof.

*Id.*

In October 1996, UNM executed an assignment to Sandia to correct Draper's prior assignment to UNM, which "was made in error" (Draper Assignment).  J.A. 444.  The Draper Assignment referenced the invention that led to the '321 patent and explicitly transferred to Sandia "those rights and interests previously assigned to [UNM] by Bruce Draper . . . and to any and all Patents which may be issued thereon . . . and to any and all divisions, reissues, continuations, and extensions."  *Id.*

While the application that led to the '321 patent was pending, Brueck and Zaidi (two of the named '321 inventors working for UNM) continued their research.  J.A. 25. On September 17, 1997, they filed the application that led to the '998 patent, titled "Method and Apparatus for Extending Spatial Frequencies in Photolithography Images."  The application incorporated the '321 patent by reference, but did not claim priority to any earlier-filed

application. The record shows that Sandia's employee, Draper, was not listed as an inventor to the '998 patent and had no inventive contribution to any claim in the patent. J.A. 26. UNM obtained assignments from both Brueck and Zaidi for the '998 patent. J.A. 5.

During prosecution of the '998 patent, the U.S. Patent and Trademark Office (PTO) twice rejected its claims for double patenting over the '321 patent, which shared two common inventors. The examiner stated that "[t]he subject matter claimed in the instant application is fully disclosed in the ['321] patent and is covered by the patent since the patent and the application are claiming common subject matter." J.A. 252–53, 263–64. To overcome these double-patenting rejections, UNM filed a terminal disclaimer, which specified that "any patent granted on this instant application shall be enforceable only for and during such period" that the '998 and '321 patents "are commonly owned." J.A. 274. In the terminal disclaimer, UNM stated that it was "the owner of record of a 100 percent interest in the instant application." *Id.* The '998 patent issued on March 28, 2000.

In July 2002 and August 2007, respectively, UNM assigned its own interest in the '321 and '998 patents to STC—a wholly-owned licensing arm of UNM. J.A. 25. In 2008, STC successfully petitioned the PTO to correct the inventorship of the '998 patent to include two more named inventors—Steve Hersee and Kevin Malloy. J.A. 315–27. Hersee and Malloy were employees of UNM at the time of invention and assigned their interests in the '998 patent to UNM. J.A. 25. Also in 2008, STC successfully sought a certificate of correction from the PTO to indicate that the '998 patent is a continuation-in-part of the '321 patent. J.A. 328–35.

STC filed the present infringement suit concerning the '998 patent against Intel on November 15, 2010. J.A. 110. Although Sandia has had an ownership interest in

the '321 patent since October 1996 through the Draper Assignment, Sandia had never claimed any interest in the '998 patent.  *See* J.A. 414.  STC and Sandia's relationship also reflected this understanding.  For example, in 2009, STC and Sandia entered into a royalty-sharing "Commercialization Agreement" for the '321 patent, which does not mention the '998 patent.  J.A. 880–82.

STC had also on multiple occasions held itself out to be the sole owner of the '998 patent.  For instance, STC filed its requests with the PTO in 2008 as the sole "owner of record."  *E.g.*, J.A. 274.  STC had also filed multiple suits asserting the '998 patent without joining Sandia.  *See* J.A. 340, 351.  Further, STC had entered licenses with other parties on the '998 patent without sharing any royalty proceeds with Sandia.  *See* J.A. 344, 359–68.

During discovery in the present litigation, non-party Sandia indicated that it believed it had no ownership interest in the '998 patent.  Intel then asserted that STC could not enforce the '998 patent under the terms of the terminal disclaimer, which required identical ownership of both the '321 and '998 patents.  J.A. 274, 458–59.  In response, STC contended (as it does on appeal here) that Sandia did in fact co-own the '998 patent since it issued by operation of the Draper Assignment.  Alternatively, Sandia obtained ownership of the '998 patent when it formally became a continuation-in-part of the '321 patent.  Nevertheless, in December 2011, out of "an abundance of caution," STC "confirm[ed] the prior [Draper] [A]ssignment" and "assign[ed] an undivided interest in each of" the '321 and '998 patents to Sandia (2011 Assignment).  J.A. 460.

## II.

In January 2012, Intel moved for summary judgment, asserting that the '998 patent was unenforceable for failing to comply with the common-ownership requirement of the terminal disclaimer.  STC contended that the

language of the Draper Assignment from UNM to San-
dia—specifically, the terms "the invention" and "issued
thereon"—operated automatically to give Sandia an
interest in the '998 patent the moment it issued. J.A. 10.
Alternatively, STC relied on the Draper Assignment,
which gave Sandia an interest in "any and all divisions,
reissues, continuations, and extensions thereof." STC
claimed that this language operated to effect Sandia's
ownership when the PTO issued the certificate of correc-
tion in December 2008, formally making the '998 patent a
continuation-in-part of the '321 patent. J.A. 11.

The district court rejected both of STC's theories and
granted partial summary judgment for Intel. The district
court reasoned that ownership rights must derive from
inventorship and, because Draper did not co-invent any
claims of the '998 patent, he had no interest in the '998
patent to assign. Thus, the court held that Sandia did not
co-own the '998 patent with UNM or STC at any point
prior to the December 2011 Assignment. J.A. 16. The
court did not grant summary judgment on the remaining
issue of whether it was truly the same Sandia entity that
co-owned each of the '321 and '998 patents.

The parties then cross-moved on the issue of standing,
given Sandia's co-ownership of the '998 patent (since at
least December 2011) and absence from the case. Sandia
refused to join the case, "prefer[ring] to take a neutral
position with respect to this matter." J.A. 884–85. The
district court granted Intel's motion to dismiss for lack of
standing.

Relying on *Ethicon, Inc. v. United States Surgical
Corp.*, 135 F.3d 1456 (Fed. Cir. 1998), the district court
explained that when a patent is co-owned, a co-owner
seeking to enforce the patent must join all other co-
owners as plaintiffs to establish standing. Without this
joinder, the plaintiff cannot pursue an infringement suit.
J.A. 31. The district court acknowledged that Federal

Rule of Civil Procedure 19(a) generally gives a court the ability to join a required party involuntarily. However, the district court explained that *Ethicon* states that a co-owner ordinarily has the substantive right to impede another co-owner's infringement action by refusing to voluntarily join the suit. The court noted that only two limited circumstances have been as yet recognized that would allow for involuntary joinder, but neither was present here. J.A. 31–39.

Finally, the district court rejected STC's assertion that it should be able to proceed equitably without joining a necessary party under Rule 19(b). The district court weighed each Rule 19(b) factor and found that "equity and good conscience require that this action not go forward without Sandia." J.A. 39–43. STC does not appeal this ruling, but does appeal whether Sandia can be involuntarily joined under Rule 19(a) as well as the district court's partial grant of summary judgment on the timing of Sandia's co-ownership.

## III.

This court reviews a district court's dismissal for lack of standing de novo. *Isr. Bio-Eng'g Project v. Amgen, Inc.*, 475 F.3d 1256, 1262–63 (Fed. Cir. 2007). This court has long applied the rule that a patent co-owner seeking to maintain an infringement suit must join all other co-owners. *See, e.g.*, *id.* at 1264–65. And, in *Ethicon*, this court held that, "as a matter of substantive patent law, all co-owners must ordinarily consent to join as plaintiffs in an infringement suit." 135 F.3d at 1468; *see also Schering Corp. v. Roussel-UCLAF SA*, 104 F.3d 341, 345 (Fed. Cir. 1997) ("Ordinarily, one co-owner has the right to impede the co-owner's ability to sue infringers by refusing to voluntarily join in such a suit." (citing *Willingham v. Lawton*, 555 F.2d 1340, 1344 (6th Cir. 1977))).

STC's argument in support of standing is purely legal. STC asserts that this court's holding in *Ethicon* does not

8                                    STC.UNM v. INTEL CORPORATION

address a Rule 19(a) involuntary joinder at all.   STC
claims that *Ethicon* has been repeatedly and erroneously
interpreted by this court in various instances of dicta to
create a rule contrary to Rule 19(a) that does not actually
exist.   STC asserts that "there is no rule of substantive
patent law that precludes the application of Rule 19."
Appellant's Br. 15.   STC thus argues that the holding in
*Ethicon* yields to Rule 19(a)'s involuntary joinder test.

Rule 19(a) states the following:

(1) *Required Party.* A person who is subject to ser-
vice of process and whose joinder will not deprive
the court of subject-matter jurisdiction must be
joined as a party if:

(A) in that person's absence, the court cannot ac-
cord complete relief among existing parties; or

(B) that person claims an interest relating to the
subject of the action and is so situated that dispos-
ing of the action in the person's absence may:

(i) as a practical matter impair or impede the per-
son's ability to protect the interest; or

(ii) leave an existing party subject to a substantial
risk of incurring double, multiple, or otherwise in-
consistent obligations because of the interest.

(2) *Joinder by Court Order.* If a person has not
been joined as required, the court must order that
the person be made a party. A person who refuses
to join as a plaintiff may be made either a defend-
ant or, in a proper case, an involuntary plaintiff.

As support for its position, STC notes that "[n]owhere
in the majority opinion in *Ethicon* is Rule 19 mentioned."
Appellant's Br. 12.   STC acknowledges though that the
dissent in *Ethicon* did explicitly argue that "[t]here is no
barrier to the involuntary joinder of a joint inventor
and/or co-owner under Rule 19, if such is needed to bring

before the court all persons deemed necessary to the suit." 135 F.3d at 1472 (Newman, J., dissenting). STC correctly notes that the majority opinion in *Ethicon* does not explicitly refer to Rule 19; however, STC is incorrect in arguing that Rule 19 trumps the holding that substantive patent law ordinarily requires consent to joinder from all co-owners.

Importantly, the holding in *Ethicon* that substantive patent law requires co-owners (ordinarily) to consent to suit was not dictum. Rather, it was essential to the disposition of the case. In *Ethicon*, this court considered, *inter alia*, whether a plaintiff who was a co-owner of the asserted patent could maintain an infringement suit despite an absent co-owner. The other co-owner had granted a retroactive license to the accused infringer and refused to join the suit as a co-plaintiff. This court considered the effect of the license in light of principles expressed in a prior case, *Schering Corp. v. Roussel–UCLAF SA*, 104 F.3d 341 (Fed. Cir. 1997).

In *Ethicon*, this court acknowledged two principles about the retroactive license granted to the accused infringer. First, "a license to a third party only operates prospectively." *Ethicon*, 135 F.3d at 1467. Thus, the plaintiff, Ethicon, could not sue the defendant, U.S. Surgical, for any damages incurred after the date of the license or for any other prospective relief that may have otherwise been warranted. *Id.*; *see Schering*, 104 F.3d at 345 ("[B]y granting a license . . . to a defendant that has already been sued for infringement, a patent co-owner can effectively deprive its fellow co-owner of the right to sue for and collect any infringement damages that accrue after the date of the license. . . . [or] obtain an injunction against future acts of infringement by the licensee . . . .").

Second, "[a]bsent agreement to the contrary, a co-owner cannot grant a release of another co-owner's right to accrued damages." *Ethicon*, 135 F.3d at 1467. Thus,

although the non-plaintiff co-owner's retroactive license had released U.S. Surgical from any past damages potentially owed to him, he could not "release U.S. Surgical from its liability for past accrued damages to Ethicon." *Id.*; *see Schering*, 104 F.3d at 345 ("[T]he grant of a license by one co-owner cannot deprive the other co-owner of the right to sue for accrued damages for past infringement. That would require a release, not a license, and the rights of a patent co-owner, absent agreement to the contrary, do not extend to granting a release that would defeat an action by other co-owners to recover damages for past infringement.").

These two effects of the retroactive license thus did not entirely dispose of the case. The retroactive license did not eliminate the claim Ethicon had for U.S. Surgical's alleged past infringement. Instead, this court had to go on to apply the "settled principle" that "[a]n action for infringement must join as plaintiffs all co-owners." *Ethicon*, 135 F.3d at 1467 (citing *Waterman v. Mackenzie*, 138 U.S. 252, 255 (1891)). And, because the non-plaintiff co-owner refused to join the suit as a co-plaintiff, this court held that, "as a matter of substantive patent law, all co-owners must ordinarily consent to join as plaintiffs in an infringement suit." *Id.* at 1468. Indeed, generally "one co-owner has the right to impede the other co-owner's ability to sue infringers by refusing to voluntarily join in such a suit." *Schering*, 104 F.3d at 345. This holding meant that Ethicon was unable to maintain its suit.

Whether this court in *Ethicon* expressly mentioned Rule 19(a)—the involuntary joinder provision—does not change the effect the holding had on it. *Cf. DDB Techs., L.L.C. v. MLB Advanced Media, L.P.*, 517 F.3d 1284, 1289 n.2 (Fed. Cir. 2008) ("[W]e have explicitly held that Rule 19 does not permit the involuntary joinder of a patent co-owner in an infringement suit brought by another co-owner."). Rules of procedure, such as that in Rule 19(a), must give way to substantive patent rights. 28 U.S.C.

§ 2072 (2012); *see, e.g.*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997) ("[R]ules of procedure 'shall not abridge, enlarge or modify any substantive right.'" (quoting § 2072)).  To remove any doubt, this court holds that the right of a patent co-owner to impede an infringement suit brought by another co-owner is a substantive right that trumps the procedural rule for involuntary joinder under Rule 19(a).

There are, of course, scenarios that will overcome this rule against involuntary joinder of a patent owner or co-owner in particular instances.  As this court acknowledged in *Ethicon* and *DDB Techs.*, two such scenarios have as yet been recognized.  "First, when any patent owner has granted an exclusive license, he stands in a relationship of trust to his licensee" and can be involuntarily joined as a plaintiff in the licensee's infringement suit; second, "[i]f, by agreement, a co-owner waives his right to refuse to join suit, his co-owners may subsequently force him to join in a suit against infringers." *Ethicon*, 135 F.3d at 1468 n.9 (citing *see Indep. Wireless Tel. Co. v. Radio Corp. of Am.*, 269 U.S. 459, 469 (1926); *Willingham*, 555 F.2d at 1344–45); *see DDB Techs.*, 517 F.3d at 1289 n.2; *see also Prima Tek II, L.L.C. v. A-Roo Co.*, 222 F.3d 1372, 1377 (Fed. Cir. 2000) ("As a general rule, this court continues to adhere to the principle set forth in *Independent Wireless* that a patentee should be joined, either voluntarily or involuntarily, in any infringement suit brought by an exclusive licensee."); *Schering*, 104 F.3d at 345 ("Absent such an agreement [allowing co-owners to sue unilaterally], Schering, as a co-owner, would not be able to sue for infringement if its co-owner Roussel declined to join the suit.").  Hence, as stated in *Ethicon*, ordinarily an absent co-owner must consent to join the suit.  None of the authorities cited in the dissent are to the contrary.

In the present case, neither of the above scenarios applies.  And STC has not argued that some third scenario

should be recognized that would bring about a different result based on the facts of this case. Moreover, each of the recognized exceptions relies predominantly on an absent co-owner who has in some way affirmatively given up its substantive right to refuse to join the suit. In this case, Sandia has—at the other end of the spectrum— affirmatively retained this right by consistently expressing its desire to *not* join the case.

Accordingly, because Sandia has not voluntarily joined this suit, and because no exception to this general substantive rule applies, STC lacks standing to maintain its suit against Intel.

This court is, of course, conscious of the equities at play in this case. Unless STC can secure Sandia's voluntary joinder, obtain the '998 patent (and '321 patent) outright, or become the exclusive licensee of Sandia's interest, STC cannot enforce the '998 patent in court. STC is certainly still free to enjoy all the rights a co-owner enjoys, such as commercializing or exploiting the '998 patent through licensing without consent of the other co-owners. *See* 35 U.S.C. § 262 (2012). Admittedly, a license demand may have less bite if STC cannot sue potential licensees if they refuse (and if Sandia would not voluntarily join the suit). However, this limit on a co-owner's right to enforce a patent is one effect of the reality that each co-owner is "at the mercy" of its other co-owners. *Ethicon*, 135 F.3d at 1468 (quoting *Willingham*, 555 F.2d at 1344). Importantly, this limit protects, *inter alia*, a co-owner's right to not be thrust into costly litigation where its patent is subject to potential invalidation. Furthermore, the rule requiring in general the participation of all co-owners safeguards against the possibility that each co-owner would subject an accused infringer to a different infringement suit on the same patent. Both concerns underpin this court's joinder requirement for patent owners.

STC.UNM v. INTEL CORPORATION                              13

Finally, because STC cannot maintain the present suit without Sandia due to its lack of standing, this court need not address the appealed ownership issues concerning the '998 patent.

IV.

Because co-owner Sandia did not consent to join this infringement suit against Intel and cannot otherwise be involuntarily joined on these facts, STC cannot maintain its suit. Accordingly, this court affirms the district court's dismissal of the case.

**AFFIRMED**

# United States Court of Appeals
# for the Federal Circuit

_____

**STC.UNM,**
*Plaintiff-Appellant,*

**v.**

**INTEL CORPORATION,**
*Defendant-Appellee.*

_____

2013-1241

_____

Appeal from the United States District Court for the District of New Mexico in No. 10-CV-01077, Judge Robert C. Brack.

_____

NEWMAN, *Circuit Judge*, dissenting.

The court today holds that Federal Rule of Civil Procedure 19 uniquely does not apply in patent cases. The panel majority holds that although the co-owner of the patent here in suit is an indispensable party to this infringement suit, the co-owner cannot be joined under Rule 19, and thus the patent cannot be enforced. This holding is contrary to not only Rule 19, but to precedent. I respectfully dissent.

### JOINDER OF NECESSARY PARTIES

The University of New Mexico, together with Sandia Corporation, are co-owners of the '998 patent. Unless co-owners have agreed otherwise, by statute each co-owner

has the right to make, use, and sell the patented subject matter, as well as to alienate its interest in whole or in part.  *See* 35 U.S.C. §262 ("Joint Owners").

Also by statute: "A patentee shall have remedy by civil action for infringement of his patent."  35 U.S.C. §281 ("Remedy for Infringement of Patent").  Precedent establishes that all entities with the right to enforce the patent are necessary parties to an action for enforcement; the purpose is to shield the accused infringer from multiple suits, as well as to resolve all potential claims efficiently and fairly.  Entities with enforcement rights who do not voluntarily join in such suit "must" be joined involuntarily, as provided by Federal Rule of Civil Procedure 19(a) ("Required Joinder of Parties").

Departing from this clear and compulsory procedure, the panel majority holds that co-owner Sandia cannot be involuntarily joined with the University in this infringement suit, thus preventing the University from enforcing the patent, for Sandia is a necessary party.  That holding is not correct.  When a party declines voluntarily to join in a legal action for which it is deemed necessary, involuntary joinder is provided by Federal Rule 19.[1]  The panel majority's ruling that joinder under Rule 19 does not apply to co-owners of a patent unless the co-owners had previously agreed to joinder is contrary to law.

## A

Federal Rule 19(a) provides for the involuntary joinder of a necessary party.  It is not disputed that Sandia is a necessary party, and that Sandia is within the court's

---

[1]   The Federal Rules are adopted by Congress and have the force of law.  28 U.S.C. §2072; *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 406-07 (2010); 4 Charles Alan Wright et al., *Federal Practice and Procedure* §1030 (3d ed. 2002).

personal jurisdiction, with appropriate venue. Rule 19 requires joinder:

**Rule 19**. **Required Joinder of Parties**

    **(a) Persons Required to be Joined if Feasible.**

        **(1)** *Required Party*. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

            **(A)** In that person's absence, the court cannot accord complete relief among existing parties; or

            **(B)** That person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

                **(i)** as a practical matter impair or impede the person's ability to protect the interest; or

                **(ii)** leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

        **(2)** *Joinder by Court Order.* If a person has not been joined as required, the court must order that the person be made a party. A person who refuses to join as a plaintiff may be made either a defendant or, in a proper case, an involuntary plaintiff.

Rule 19 is not permissive; the word "must" is used in both subsections (1) and (2).

    Rule 19 was adopted in 1937, succeeding the joinder provisions in the Federal Equity Rules of 1912. Profes-

sors Wright & Miller state that the "most typical application" of Rule 19(a) is in patent and copyright contexts. *See* 7 Charles Alan Wright et al., *Federal Practice and Procedure* §1606 (3d ed. 2013).

The underlying concern in patent cases arises from the right of a holder of an undivided interest to enforce the patent. In *Waterman v. McKenzie*, 138 U.S. 252 (1891), the Supreme Court reiterated the principle that all entities with the right of enforcement must join in such suit. In *Independent Wireless Telegraph Co. v. Radio Corp. of America*, 269 U.S. 459 (1926), the Court discussed joinder of indispensable parties:

> The presence of the owner of the patent as a party is indispensable, not only to give jurisdiction under the patent laws, but also in most cases to enable the alleged infringer to respond in one action to all claims of infringement for his act . . . .

*Id.* at 468. The Court explained that if the patent owner cannot be joined as a defendant, it can be joined as an involuntary plaintiff. *Id*. at 472. This principle is explicit in Rule 19(a)(2).

Rule 19 was elaborated in 1966, the Advisory Committee Note emphasizing avoiding "repeated lawsuits on the same essential subject matter":

> Whenever feasible, the persons materially interested in the subject of the action . . . should be joined as parties so that they may be heard and a complete disposition made.

Extensive scholarship had elaborated these principles. *See, e.g.*, *Developments in the Law – Multiparty Litigation in the Federal Courts*, 71 Harv. L. Rev. 877, 881-85 (1958) (discussing the principles supporting compulsory joinder: to avert unfairness to the defendant, the effect on absentee property interests, and to achieve finality of disputed issues); *see also* Note, *Indispensable Parties in the Federal*

*Courts*, 65 Harv. L. Rev. 1050, 1052 (1952) ("The classic test for determining indispensability in the federal courts is that laid down one hundred years ago by the Supreme Court in *Shields v. Barrow:* indispensable parties are 'Persons who not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience.'").

In *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966), the Court discussed joinder and its embodiment in the Federal Rules:

> Under the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged.

*Id.* at 724. In *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 111 (1968), the Court reiterated the obligation of the courts to provide efficient adjudication of disputes, stating that Rule 19 serves "the interest of the courts and the public in complete, consistent, and efficient settlement of controversies," by authorizing joinder of all parties with an interest, as well as requiring the joinder of all necessary parties.

### B

These principles are beyond debate. They have been applied in a wide variety of circumstances, under the aegis of Rule 19. Following is a sampling from the other federal circuits, illustrating the breadth with which joinder has been administered and the solidity of its principles. *E.g.*, *Pujol v. Shearson/Am. Express, Inc.*, 877 F.2d 132, 134 (1st Cir. 1989) ("[W]hen applying Rule 19(a), a court essentially will decide whether considerations of efficiency and fairness, growing out of the particu-

lar circumstances of the case, require that a particular person be joined as a party."); *Schlumberger Indus., Inc. v. Nat'l Sur. Corp.*, 36 F.3d 1274, 1286 (4th Cir. 1994) ("In determining whether a party is necessary and, then, indispensable, the court must consider the practical potential for prejudice in the context of the particular factual setting presented by the case at bar."); *Atlantis Dev. Corp. v. United States*, 379 F.2d 818, 824 (5th Cir. 1967) (involuntary joinder is favored by "the great public interest, especially in these explosive days of ever-increasing dockets, of having a disposition at a single time of as much of the controversy to as many of the parties as is fairly possible consistent with due process").

A Sixth Circuit case dealt with the procedure whereby a patent co-owner could sue for infringement. In *Willingham v. Star Cutter Co.*, 555 F.2d 1340 (6th Cir. 1977), the court stated the issue as "whether a co-owner could authorize by contract another co-owner to file suit for patent infringement without the permission of the first co-owner, in an action in which the unwilling co-owner is joined as an involuntary plaintiff under Rule 19." *Id.* at 1343. The court held that if the unwilling co-owner "is amenable to service of process and his joinder would not deprive the court of jurisdiction in the sense of competence over the action, he should be joined as a party; and if he has not been joined, the court should order him to be brought into the action." *Id.* at 1346.

Although it is not disputed that Sandia is an indispensable party to the University's infringement suit, I point out that the Federal Circuit has held that whether a party is indispensable is a matter of regional circuit law. *See Dainippon Screen Mfg. Co., Ltd. v. CFMT, Inc.*, 142 F.3d 1266 (Fed. Cir. 1998) (determining whether a subsidiary was an indispensable party in a declaratory judgment action for invalidity and non-infringement). In *Turner v. Brookshear*, 271 F.2d 761 (10th Cir. 1959), that court stated:

> Prior to the adoption of Rule 19(a) . . . it was well settled that an indispensable party is one who has such an interest in the subject matter of the controversy that a final decree cannot be rendered between the other parties to the suit without affecting his interest, or without leaving the controversy in such a situation that its final determination may be inconsistent with equity and good conscience.  Rule 19(a) did not change the former rule.

*Id.* at 764.  Whether Federal Circuit or Tenth Circuit law is applied, the result is the same: Sandia as co-owner with enforcement rights is an indispensable party to this infringement suit, and joinder is required as a matter of the procedural law embodied in Rule 19 and in precedent. Joinder of an indispensable party does not require a prior agreement to join, whether the parties are co-owners or patentee-licensee.

## C

Until today, the Federal Circuit has been in accord with the Supreme Court's and the regional circuits' consistent judicial view of Rule 19.  In *AsymmetRx, Inc. v. Biocare Medical, LLC*, 582 F.3d 1314, 1321 (Fed. Cir. 2009), we considered a complex of licensing arrangements, and held that patentee Harvard College was a necessary party for "the purpose of Rule 19 to avoid multiple suits or incomplete relief arising from the same subject matter is best served by joinder . . . which would permit the relationships between AsymmetRx, Biocare, and Harvard to all be resolved at the same time as well as solve the standing problem."

In *University of Utah v. Max-Planck-Gesellschaft Zur Forderung Der Wissenschaften E.V.*, 734 F.3d 1315 (Fed. Cir. 2013), the court discussed joinder under Rule 19 in an action to correct inventorship, where patent ownership and interested parties included a state university and

several foreign entities. Amid issues including Eleventh Amendment immunity and representation of foreign owners, the court considered issues of joinder in the context of "the proposition that a 'patent owner is an indispensable party who must be joined'" in an infringement suit. *Id.* at 1326 (quoting *Alfred E. Mann Found. for Sci. Research v. Cochlear Corp.,* 604 F.3d 1354, 1359 (Fed. Cir. 2010)).

In *Abbott Laboratories v. Diamedix Corp.*, 47 F.3d 1128, 1133 (Fed. Cir. 1995), the court held that the patentee must be permitted to join as a party plaintiff in a suit by the licensee, stating that "Rule 19(a) provides that a person who can be joined as a party should be joined if (1) the person's absence would make it impossible to grant complete relief to the parties . . . ." The court observed that "[t]he purpose of rule 19 [is] to avoid multiple suits or incomplete relief arising from the same subject matter." *Id.*

There is no support, in law of logic or justice, for today's holding that the co-owner of a patent cannot be involuntarily joined in an infringement suit and can thereby, by its absence, bar the suit. The two cases on which the panel majority relies do not support the majority's position; indeed, these cases comport with the contrary position.

The first case relied on by the panel majority is *Schering Corp. v. Roussel-UCLAF SA,* 104 F.3d 341, 344 (Fed. Cir. 1997), involving a dispute between patent co-owners Schering and Roussel. Co-owner Schering sued Zeneca for infringement, and two weeks later co-owner Roussel granted a license to Zeneca. Schering argued that the terms of the co-ownership agreement, which gave each co-owner the right to sue infringers and required each co-owner to provide "reasonable assistance," prevented Roussel from licensing infringer Zeneca. This court held that the agreement did not deprive Roussel of the right to

grant a license to Zeneca, but that the license grant was not retroactive and that "one co-owner cannot deprive the other co-owner of the right to sue for accrued damages for past infringement," *id.* at 345. No aspect of the *Schering* decision, even in dictum, supports today's ruling that Sandia cannot be joined under Rule 19 in the University's infringement suit.

The panel majority also seeks support in *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456 (Fed. Cir. 1998). However, that case presented no dispute as to involuntary joinder, and raised no question of applicability of Rule 19. The issue in *Ethicon* was whether Mr. Young Jao Choi, who contributed to two of the fifty-five patent claims, thereby became co-owner of the patent with the full right to grant a license to all fifty-five claims. All parties stipulated to Choi's joinder as a defendant-intervenor, a status reflected in the official caption. The court's ruling in *Ethicon* was not concerned with involuntary joinder, but with the licensing authority of this asserted co-inventor.

The *Ethicon* court remarked that a co-owner can "impede" the other co-owner's infringement action. 135 F.3d at 1468. Indeed it can, for when Mr. Choi was ratified as co-owner he did "impede" the infringement action by granting a license to the accused infringer. The impedance was not due to non-joinder, but to Choi's license to U.S. Surgical. *Ethicon* did not involve Rule 19 or any aspect of joinder, and provides no support for today's ruling that co-owner Sandia cannot be involuntarily joined.

Departing from precedent, the panel majority proposes to restrict Rule 19 in patent cases, and proposes that a patent co-owner cannot be involuntarily joined in an infringement suit unless the co-owner had previously contracted to join in any infringement suit. The panel majority offers the anomalous rationale that when an

infringement suit is brought by an exclusive licensee, the patent owner can be joined; but when an infringement suit is brought by a co-owner, the other co-owner cannot be involuntarily joined.   No precedent supports this theory.

By refusing to apply Rule 19(a) and refusing to join co-owner Sandia, the panel majority deprives co-owner the University of judicial determination of the asserted infringement, thwarting the processes of law.  I respectfully dissent.

## CERTIFICATE OF SERVICE

I hereby certify that on the 3rd day of July, 2014, I electronically filed the foregoing PETITION FOR REHEARING EN BANC OF PLAINTIFF-APPELLANT STC.UNM using the CM/ECF system of the Court, which will send a notice of electronic filing to the following counsel of record:

Robert A. Van Nest   rvannest@kvn.com
Benedict Y. Hur   bhur@kvn.com
Brian L. Ferrall   bferrall@kvn.com
Steven A. Hirsch   shirsch@kvn.com
Dan L. Bagatell   dbagatell@perkinscoie.com
Chad S. Campbell   cscampbell@perkinscoie.com

Plaintiff-Appellant will hand deliver sixteen paper copies of this document, as filed with the CM/ECF system of the Court, to the Clerk of the Court of Appeals for the Federal Circuit in Washington D.C. pursuant to ECF-10(D).


July 3, 2014                              */s/ Rolf O. Stadheim*
                                         Rolf O. Stadheim